Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 7309 | **DATE** | 3/1/2001 |
| **CASE TITLE** | Northwestern University vs. The City of Evanston | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing re-set for 3/16/2001 at 10:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order: Defendant's motion to dismiss (4-1) is denied. The status hearing set for 3/9/01 is stricken.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | MAR 0 6 2001 date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | CM docketing deputy initials | 12 |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | FILED FOR DOCKETING 01 MAR -5 PM 5:17 | 3/2/2001 date mailed notice | |
| GL | courtroom deputy's initials | Date/time received in central Clerk's Office | GL mailing deputy initials | |


DOCKETED
MAR 0 6 2001

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NORTHWESTERN UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 00 C 7309 |
| | ) | |
| THE CITY OF EVANSTON, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, Chief Judge:

Plaintiff, Northwestern University (the "University"), brought a complaint against defendant the City of Evanston (the "City") pursuant to 42 U.S.C. § 1983. The University brings this action for declaratory judgment and asks us to declare illegal the City's action in designating the Northeast Evanston Historic District (the "Local Historic District") and to enjoin the City from enforcing Ordinance No. 56-O-00, entitled "An Ordinance Designating the Northeast Evanston Historic District as an Evanston Historic District" (the "Designation Ordinance"), creating the Local Historic District. The City moves pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the University's complaint for failure to state a claim on which relief may be granted and for lack of subject matter jurisdiction. As explained below, we deny the motion.

12

## BACKGROUND

The following facts are taken from plaintiff's complaint and accepted as true, as we must when deciding a motion to dismiss. *MCM Partners, Inc. v. Andrews-Bartlett & Assoc., Inc.*, 62 F.3d 967, 972 (7th Cir. 1995). Northwestern University was founded in 1850 and established pursuant to a Charter granted by the Legislature of the State of Illinois in 1851. In 1855, that Charter was amended to exempt the University from property taxation. In 1853, the founders of the University purchased a 379-acre tract of land that they named Evanston (this tract of land is now part of what is the current City). The University's mission "is to establish and enhance excellence in its academic, research and professional programs." According to the University, its ability to use the property it owns in the City is integral to fulfilling its mission and advancing the public's interest in higher education.

The University seeks to invalidate the significant additional regulations that the City, by designating the Local Historic District, imposed on the University's properties, allegedly in retaliation for the University's refusal to forego its State-granted Charter exemption from property taxation. By designating the Local Historic District, the City imposed an additional regulatory scheme on what the University calls its T1 and T2 Districts.

The City has a general enabling ordinance, the Evanston Historic Preservation Ordinance (the "Preservation Ordinance"), that sets forth the procedures and criteria for designation of a local historic district. The Preservation Ordinance places

significant restrictions on property owners' ability to use their property, including restrictions on any exterior alteration, construction, demolition or relocation of properties within any historic district that is established.  By establishing the Local Historic District, the Designation Ordinance subjects the University's properties to the regulatory scheme of the Preservation Ordinance.  This regulatory scheme forces the University to apply to the Evanston Preservation Commission (the "Commission") for a Certificate of Appropriateness for any alteration, repair, maintenance, etc. that the University might want to complete on its buildings within the Local Historic District. Certain projects must be submitted to the Commission for review and approval, while such projects did not require the City's approval prior to the designation of the Local Historic District.  The Commission reviews the request to determine whether it meets the standards in the Preservation Ordinance and the Secretary of the Interior's "Standards for Rehabilitation of Historic Properties."

The University alleges that the City's designation of the Local Historic District is part of a pattern of conduct to circumvent the University's Charter rights.[1] Moreover, the University alleges that the City has misused its authority to establish historic districts and targeted the University from the inception of the proceedings involving the consideration of an historic district in the City.  The Commission came up with a Proposed Local Historic District in early 2000, to which the University and Evanstonians for Responsible Preservation ("ERP") objected.  A hearing was held on

---

[1]The University cites many actions taken by the City as evidence of this pattern in its complaint that are too lengthy to reproduce here.  See Complaint, ¶¶ 32-38.

April 12, 2000 by the Planning and Development Committee and it submitted the matter to the City Council. When ERP reiterated its objections to the Proposed Local Historic District and on May 8, 2000, the City Council directed the Planning and Development Committee to consider modifications (i.e. redrawing) to the boundaries of the Proposed Local Historic District. Modifications were in fact made, but there were no hearings to consider the redrawn district. On May 22, 2000, the City Council adopted the Designation Ordinance that created the redrawn Local Historic District.

The University alleges that the Local Historic District adopted is vastly different from the Proposed Local Historic District, and that the hearings and testimony at those hearings only addressed the Proposed Local Historic District, not the Local Historic District that was eventually recognized. In designating the Local Historic District, the City excluded over 60% of the structures previously designated as national historic landmarks and excluded over 500 buildings and structures including those owned by the non-objecting property owners. The University alleges that the Commission, Planning and Development Committee and the City failed to recognize or give due consideration to the University's objections and failed to give appropriate weight to the public interest in adopting the Designation Ordinance creating the Local Historic District.

## ANALYSIS

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint, not decide the merits of the case. *Triad Assocs., Inc. v. Chicago*

4

*Housing Auth.*, 892 F.2d 583, 586 (7th Cir. 1989). In considering a motion to dismiss, we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *MCM Partners, Inc.*, 62 F.3d at 972. We should not grant a motion to dismiss unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102 (1957). Under Rule 12(b)(1), a court must dismiss any action for which it lacks subject matter jurisdiction. A district court has subject matter jurisdiction over all civil actions arising under the Constitution. See 28 U.S.C. §1331 (federal question). A motion to dismiss for lack of subject matter jurisdiction will be denied unless it is shown that the federal statute upon which the claim is premised is inapplicable. *Health Cost Controls v. Skinner*, 44 F.3d 535, 537(1995).

## I.

First, the City argues that the complaint fails to allege the necessary elements to establish an equal protection claim under *Village of Willowbrook v. Olech*. 528 U.S.562, 120 S.Ct.1073 (2000). In *Olech*, the plaintiff alleged that the Village intentionally demanded a 33-foot easement as a condition of connecting her property to the municipal water supply where the Village required only a 15-foot easement from other similarly situated property owners. *Olech*, 120 S.Ct. at 1075. The complaint also alleged that the Village's demand was "irrational and wholly arbitrary". *Id*. According to the Seventh Circuit, the plaintiff could allege an equal protection violation

by asserting that state action was motivated solely by a "'spiteful effort to "get" him for reasons wholly unrelated to any legitimate state objective.'" *Village of Willowbrook v. Olech*, 160 F.3d 386, 387 (7th Cir. 1998) (quoting *Esmail v. Macrane*, 53 F.3d 176, 180 (7th Cir. 1995)). On appeal, the Supreme Court held that "[t]hese allegations, quite apart from the Village's subjective motivation, are sufficient to state a claim for relief under traditional equal protection analysis. *Olech*, 120 S.Ct. at 1075. In the present case, the City argues that the University fails to show that the ordinance is unrelated to a legitimate governmental objective, nor does it show that any different action would have been taken absent vindictiveness.

The City's arguments incorrectly suggest that the University must "show" or prove its claims in order to avoid dismissal. That is not the standard on a motion to dismiss. *See Triad*, 892 F.2d at 586. According to the Seventh Circuit, to sufficiently allege a vindictive action equal protection claim under *Olech*, the University must simply allege that it was treated differently and that the City's actions were irrational, arbitrary and even vindictive. *Olech*, 160 F.3d at 388. Similarly, as stated in *Esmail*, where the allegation is that the unequal treatment is alleged to have been the result solely of a "vindictive campaign," such conduct, if so motivated, does violate the equal protection clause. *Esmail*, 53 F.3d at 180.

The University alleges that the City's decision to include the University's T1 and T2 District properties in the Local Historic District was "irrational, arbitrary and motivated by the City's illegitimate desire to disregard the University's Charter right

to be exempt from property taxes." The University also alleges that "the City's decision was motivated by vindictiveness against the University for its refusal to accede to the City's demand for revenue payments in lieu of property taxes." The University also alleges that the University and all other property owners initially included in the Proposed Local Historic District were similarly situated persons entitled to equal protection under the law and that without any rational basis, the City intentionally treated the University differently from other property owners excluded from the Local Historic District that initially had been included in the Proposed Local Historic District. Compl. ¶¶ 93, 98.

We note first that the University does not ask for damages in its complaint - it asks for injunctive relief. This is a strong indication that the University is claiming unequal treatment. *See Hager v. City of West Peoria*, 84 F.3d 865, 870 (7th Cir. 1996). More importantly, the Seventh Circuit has recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Olech*, 120 S.Ct. at 1074 (citing *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441, 43 S.Ct.190 (1923)). It has explained that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasion by express terms of a statute or by its improper execution through duly constituted agents." *Sioux City*, 260 U.S. at 445. The University's complaint can be construed as alleging that the City intentionally

7

redrew the Local Historic District to include only the University's buildings and that the City's decision was "arbitrary, capricious and not rationally related to a legitimate government interest."

The City contends that the University's complaint must be dismissed because it cannot "prevail upon an equal protection claim." While these allegations may be false, or not susceptible to proof, we must assume they are true for purposes of a motion to dismiss. Therefore, the University has sufficiently alleged equal protection claims.

## II.

Next, the City argues that "land use controversies" of this nature do not rise to federal claims. The City contends that the Designation Ordinance is a land use regulation comparable to a zoning ordinance and that the Seventh Circuit "has continually recognized that land use disputes of this nature do not rise to a federal constitutional violation and the remedy, if any, lies with state courts." Motion p.8. In other words, they argue that the University's claims do not amount to equal protection claims, and that we do not have jurisdiction to hear them. However, this is not a zoning case, and because it does not involve facts similar to any of the zoning cases cited by the City, we will not compare it to any of these cases.[2] More

---

[2]The City cites only cases concerning violations of procedural due process rights where the Seventh Circuit found that the property owner's ability to pursue a state remedy satisfied due process procedural requirements in a zoning dispute. Raising this argument in support of dismissing the University's equal protection claims appears on the surface inconsistent when the City in the next section of its motion argues that the claims are not ripe for review due to the University's alleged failure to exhaust its state remedies. We will address the issues of procedural and substantive due process *supra*, in our opinion.

importantly, we have already stated above that the University has successfully stated claims for equal protection stemming from the actions of the City, and so this "land use controversy" has risen to a federal claim. Therefore, there is jurisdiction in this court, and we will not dismiss the University's equal protection claims.

### III.

The City argues (presumably in the alternative) that this cause of action is not ripe for adjudication because the University has not exhausted its state remedies. In *Williamson County Regional Planning Comm. v. Hamilton Bank*, 473 U.S. 172 (1985), the Seventh Circuit identified two requirements that must be met before a federal court may adjudicate certain land use claims: (1) the final decision requirement, which requires a plaintiff to allege that he or she received a "'final decision' from the relevant government entity," *Forseth v. Village of Sussex*, 199 F.3d 363, 372 (7th Cir. 2000) (quoting *Williamson*, 473 U.S. at 186-87); and (2) the exhaustion requirement, which requires the plaintiff to seek "compensation through the procedures the State has provided for doing so." *Id*. In *Williamson*, the plaintiff's claim that the government's actions against him amounted to a taking was dismissed as premature for his failure to obtain a final administrative decision and his failure to utilize available state procedures.

First and foremost, the *Williamson* ripeness requirements are meant to be applied to federal takings claims. It is clear that there is no claim here by the University that the City's regulation effected a taking of the University's property. More importantly, however, the Seventh Circuit has held that *Williamson* ripeness does

not apply to equal protection claims. *See Forseth*, 199 F.3d at 371. Therefore, Counts I and II, the University's equal protection claims, are ripe for our review.

As for Counts III and IV, due process claims in the land use context, like takings claims, are subject to the ripeness requirements set out in *Williamson*. *See Forseth*, 199 F.3d at 369 ("Although we have recognized the potential for a plaintiff to maintain a substantive due process claim in the context of land use decisions, ... we have yet to excuse any substantive due process claim in the land-use context from Williamson's ripeness requirements."); *Unity Ventures v. County of Lake*, 841 F.2d 770, 776 (7th Cir. 1988) (Ripeness applies to procedural due process claims as well as takings and substantive due process claims; the court "will not evaluate the adequacy of the procedures available to the plaintiffs before they have availed themselves of those procedures.").

Just as the University's equal protection claims are ripe, however, so too are the due process claims. If the University were challenging an action taken by the City under the Ordinance, it is entirely possible that its claim would not be ripe. For example, if the City were attempting to make an alteration to one of its buildings, its failure to apply for a certificate of appropriateness before it took that action would mean that it had failed to follow the proper procedures set out by the Designation Ordinance, and in that case the claim would not be ripe. Here, however, the University is challenging the Designation Ordinance itself as well as the fact that the University was allegedly treated unequally and arbitrarily, and denied due process in the passage of the Designation Ordinance. There is no procedure for the University to have the

10

Designation Ordinance invalidated short of seeking relief in this court. Finally, as we noted above, the University is not asking for compensation, but for injunctive relief. Such claims are ripe, and the University should be free to litigate them in federal court immediately. *See Hager*, 84 F.3d at 870.

## IV.

Finally, the City argues that there was no violation of either substantive or procedural due process, and for that reason Counts III and IV must be dismissed. We address each claim separately.

In order to state a substantive due process claim, the University must allege that: (1) it was subjected to "arbitrary and irrational" conduct by the City; and (2) either state law remedies were inadequate or it suffered an independent constitutional violation. *Doherty v. City of Chicago*, 75 F.3d 318, 325 (7th Cir. 1996). Hence, an analysis of the University's substantive due process claim centers upon whether they have successfully alleged that the City acted arbitrarily or irrationally. See also *Harding v. County of Door*, 870 F.2d 430, 431 (7th Cir.1989).

The City argues that the University has failed to exhaust its state law remedies and therefore, its substantive due process claim must be dismissed. Whereas, the University asserts that "the City's designation of the Local Historic District was arbitrary, capricious and irrational, and thus violated the University's right to substantive due process." The University points to the changes that were made between the presentation of the Proposed Local Historic District and the actual Local Historic District. It even alleges that the City's decision was driven by personal animus

against the University. The University also alleges that state law remedies available were inadequate. At this stage, it is unnecessary for the University to prove that the allegations of arbitrariness and capriciousness are true, it is enough to simply allege that they are true. *See Doherty*, 75 F.3d at 325. Because the complaint alleges "irrational" or "arbitrary" acts and a lack of state court remedies in support of the allegation that the University has been denied substantive due process, the claim is not dismissed.

The City also argues that there was no violation of procedural due process and so Count IV of the complaint must be dismissed. Plaintiffs who bring a § 1983 action for procedural due process violations must first establish the deprivation of a constitutionally protected interest in life, liberty or property. *Williams v. Ramos*, 71 F.3d 1246, 1248 (7th Cir.1995) (per curiam). In order to ascertain whether state action affecting an individual is a deprivation, two inquiries are made: first, a life, liberty or property interest must be identified; and second, the degree of process due to the individual must be ascertained. *Hamlin v. Vaudenberg*, 95 F.3d 580, 584 (7th Cir.1996). The University clearly identifies, and the City does not contest, a protected property right. The question is whether the University has alleged that it was not afforded the adequate degree of process it was entitled.

The University alleges that the City had a constitutional duty to hold public hearings on the redrawn Local Historic District, and that its failure to do so constituted a violation of the University's procedural due process rights. According to the City, "there are no due process problems in this type of land use case." Motion p.13.

12

Moreover, the City argues that the University had an opportunity to appear at extensive hearings before the Commission and the Planning and Development Committee. However, most significantly, the City has failed to point to any law that states that the University should not have been entitled to another hearing once the Local Historic District had been redrawn. The University's claim is well-pled, and the City's arguments here concerning the facts are premature. The procedural due process claim will not be dismissed.

## CONCLUSION

For the foregoing reasons we deny the City's motion to dismiss the University's complaint. It is so ordered.

_____
Marvin E. Aspen, District Court Judge

Dated: 3/1/01