Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Marvin Aspen | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 00 C 7309 | DATE | 12/4/2002 |
| CASE TITLE | Northwestern University vs. The City of Evanston | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Enter Memorandum Opinion and Order: The City of Evanston's motion for reconsideration under Rule 59(e) (89-1) is denied

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | DEC 05 2002 | |
| | Notified counsel by telephone. | date docketed | 94 |
| | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 12/4/2002 | |
| GL | courtroom deputy's initials | date mailed notice GL | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

| | |
|---|---|
| NORTHWESTERN UNIVERSITY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 00 C 7309 |
| ) | |
| THE CITY OF EVANSTON, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

Plaintiff Northwestern University ("Northwestern" or "University") alleges that the City of Evanston ("Evanston" or "City") designed and enacted a historic preservation district that wrongfully encompassed numerous University properties. Northwestern sued Evanston pursuant to 42 U.S.C. §1983, claiming the City's action imposed an unconstitutional condition on the University and violated its rights to equal protection, due process, and freedom of speech. Evanston moved for summary judgment on all counts, and on September 11, 2002, this Court granted in part and denied in part Evanston's motion. We declined to grant summary judgment on two of Northwestern's claims: vindictive action equal protection and unconstitutional conditions. Currently before us is Evanston's Motion for Reconsideration of these two claims. For the following reasons we deny Evanston's motion.

## BACKGROUND

Northwestern currently owns approximately 240 acres of land in Evanston. Under the terms of a charter granted by the State of Illinois, this land is exempt from property taxation. Northwestern contends that the City harbors animus towards the University because Northwestern refuses to make



voluntary financial contributions to the City. A more detailed factual background can be found in our September 11, 2002 opinion granting in party and denying in part Evanston's motion for summary judgment. *See Northwestern University v. City of Evanston*, 2002 WL 31027981 (N.D. Ill. 2002).

Northwestern filed this six-count lawsuit against the City alleging that the City's action violated a number of the University's constitutional rights. On September 11, 2002, this Court granted Evanston's motion for summary judgment as to Count II (equal protection), Count III (substantive due process), Count IV (procedural due process), and Count VI (First Amendment). Evanston now urges us to reconsider our denial of summary judgment on Count I (vindictive action equal protection) and Count V (unconstitutional conditions).

## ANALYSIS

### I. Standard of Review

Evanston filed its motion for reconsideration within ten days of our September 11, 2002 order. We therefore analyze Evanston's motion under rule 59(e) of the Federal Rules of Procedure. *See United States v. Deutsch*, 981 F.2d 299, 301 (7th Cir. 1992). A Rule 59(e) motion is not an appropriate forum for rehashing previously rejected arguments, *see Caisse Nationale De Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996), and may be granted only if there has been a mistake of law or fact or if there is newly discovered evidence not previously available. *See Figgie Int'l, Inc. v. Miller*, 966 F.2d 1178, 1180 (7th Cir. 1992).

### II. Unconstitutional Conditions

Evanston makes four arguments in support of its Motion for Reconsideration on the unconstitutional conditions count. We are not persuaded by any of these arguments and deny

-2-

Evanston's motion as to this count.

In its first argument, Evanston takes issue with this Court's conclusion that there was some evidence that Alderman Drummer engaged in a plan of extortion when he allegedly made a proposal to Mr. Sunshine that conditioned exclusion of University property from the Local District on the University's agreement to make contributions to the City. According to Evanston, this Court erroneously relied upon Mr. Sunshine's affidavit in finding a dispute of material fact. Evanston contends that Mr. Sunshine's affidavit was not entitled probative weight because it conflicts with his deposition testimony. Evanston's argument overlooks the fact that a material issue of fact exists even if we do not consider Mr. Sunshine's affidavit. The deposition testimony of Mr. Sunshine and Alderman Drummer leaves unanswered many questions as to exactly what transpired between these two parties. Evanston suggests that there is no evidence that Alderman Drummer was in any way involved in a scheme to induce Northwestern to contribute to the City in return for exclusion from the Local District. Alderman Drummer's own deposition testimony suggests otherwise. For example, Alderman Drummer testified that at the "[f]irst meeting [Mr. Sunshine and I] talked generally about what was being proposed and the problems that would present to the university [sic]. Next meeting I was a little bit more specific with him about things I thought the city needed..." (Drummer Dep., Plain. Ex. D at 27). In his deposition Alderman Drummer went on to state, "I proposed what I thought the city needed was the university [sic] to take over all maintenance of Fire Station No. 3...I asked the university [sic] to return all property in the Research Park back to the tax rolls. I asked that it take over maintenance of all streets in the U district, contribute $2.5 million to the construction of a westside library. I asked them to contribute I think it was 3.5 million to a

-3-

southeast Evanston recreation facility. I asked them to make a $100 million loan to the City at 1 percent..." *Id.* at 29.

Evanston next argues that under §1983 Evanston is liable only where the City itself caused the constitutional violation. Evanston argues that because "the City Council as a body never acted on the matters Alderman Drummer discussed with Mr. Sunshine, Alderman Drummer's actions are not attributable to the City." We are not convinced that the evidence unequivocally proves that Alderman Drummer was not acting on behalf of the City. Alderman Drummer testified that he discussed his proposal to Northwestern with nearly the entire City Council, the City Manager, the Mayor, and the City's law department. Alderman Drummer stated that most of the aldermen "absolutely" knew about what he was planning to propose to Northwestern and that he kept them informed of his progress. According to Alderman Drummer, many of the aldermen, as well as Mayor Morton, were interested in pursuing the strategy and discussed with Alderman Drummer the list of contributions Northwestern would be asked to make. Although the City Council never <u>formally</u> voted to grant Alderman Drummer the authority to work out a solution with Northwestern, we cannot say that there is no dispute of material fact as to whether Alderman Drummer was operating on behalf of the City in his capacity as an alderman.

The City also argues that any agreement between Alderman Drummer and Northwestern that had the effect of trading land use relief for contributions from Northwestern would necessarily have been *ultra vires* and void. Thus, the argument continues, Alderman Drummer could not possibly have extorted Northwestern. We are not persuaded. The basis of Northwestern's unconstitutional conditions claim is that the alleged proposal was illegal. The fact that an agreement entered into between the City and the University would have been unenforceable does not change the fact that

-4-

Northwestern was put in a position to choose between its right to be free from property taxation and its interest in being excluded from the Local District. That Northwestern chose the legal option does not render its claim invalid.

Evanston next argues that, given the facts, Northwestern could not possibly have been the victim of unconstitutional extortion because Mr. Sunshine refused to accept Alderman Drummer's proposal and the City took no action to coerce Northwestern after this initial rejection. The injury in unconstitutional conditions claims, however, is not limited to the ultimate relinquishment of one's constitutional right, but may also be the deprivation of a privilege otherwise conferred. That Northwestern refused to give up its right to be free from property taxation is irrelevant. *See Memorial Hosp. v. Maricopa County*, 415 U.S. 250, 257 (1974) (finding statute denying nonemergency medical care to indigents with less than one year's residence in the county unconstitutional despite the fact that "there [was] no evidence in the record before us that anyone was actually deterred from traveling by the challenged restriction"). It is the City's act of "putting substantial pressure" on Northwestern to chose between its constitutional right to be free from property taxation and its interest in being excluded from the Local District that matters. *See Hobbie v. Unemployment Appeals Comm'n of Fla.*, 480 U.S. 136, 140-141 (1987) (noting that denial of unemployment compensation because worker refused to work on the Sabbath burdened woman's right to free exercise by forcing her to choose between following her religion and forfeiting benefits); *see also Sherbert v. Verner*, 374 U.S. 398, 404 (1963). Based on the facts before us we must conclude that a reasonable finder of fact could determine that the City included in the Local District some Northwestern properties because the University declined to forfeit its right to be free from property

taxation. We therefore deny the City's motion for reconsideration of the unconstitutional conditions count.

III. Vindictive Action

To establish a vindictive action claim the University must demonstrate that the government treated unequally those individuals who are prima facie identical in all relevant respects. Evanston contends that we misapprehended the evidence in concluding that Northwestern had presented sufficient evidence to support a vindictive action equal protection claim.

In our September 11 opinion we stated "the City *offers* evidence *suggesting* Northwestern was not singled out for differential treatment." Order at 14 (emphasis added). The City misinterprets our opinion as stating that the University did not meet its burden of demonstrating it was singled out. We made no such finding. Our order simply noted that Evanston had *offered* evidence *suggesting* Northwestern was not singled out and that Northwestern had offered contradictory evidence. We concluded that there was a genuine issue of material fact as to whether the City treated Northwestern differently from identical individuals or entities.

The fact that Northwestern was not the only property owner to have its properties included in the final Local District does not mean it was not singled out. Rather, we considered whether the properties included in the Local District were equally deserving of inclusion, or whether certain of Northwestern's properties were included because of the City's animus towards the University. Evanston also argues that our order was incorrect because we relied upon evidence of a "late amendment," which added the University's T-2 properties to the Local District. Evanston argues that there was, in fact, no "late amendment," but rather only a proposal by NEHDA, which was subsequently approved by the City Council, to add the properties. Although the City is correct that

-6-

there was technically no "amendment," the key is that certain of Northwestern's properties that were excluded from the National District for want of "residential integrity" were later added to the Local District. Likewise, our decision does not turn on whether or not the University's structures were "contributing," but rather on whether, by including these properties, the City treated Northwestern differently than other property owners.

## CONCLUSION

For the foregoing reasons we deny the City of Evanston's Motion for Reconsideration under Rule 59(e).

It is so ordered.

MARVIN E. ASPEN
United States District Judge

Dated: 12/4/02